IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SHANNON SHERMAN and <br> SIMPLE MAN, INC., <br>           Plaintiffs, <br>           v. <br> BEN & JERRY'S FRANCHISING, INC., <br> BEN & JERRY'S HOMEMADE, INC., <br> and UNILEVER UNITED STATES, INC., <br>           Defendants. | ) <br> ) <br> ) <br> ) Case No. 7:08-cv-00060 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS
BEN & JERRY'S FRANCHISING, INC. AND BEN & JERRY'S HOMEMADE, INC.**

    Defendants Ben & Jerry's Franchising, Inc. ("Ben & Jerry's") and Ben & Jerry's Homemade, Inc. ("Homemade") (collectively, the "Ben & Jerry's Defendants") submit this memorandum in support of their motion to dismiss Plaintiffs' Complaint.

**INTRODUCTION AND FACTUAL BACKGROUND**[1]

    Plaintiffs Simple Man, Inc. ("Simple Man") and Shannon Sherman ("Sherman") (collectively, "Plaintiffs") have filed an eight-count complaint against Ben & Jerry's and Homemade, as well as Unilever United States, Inc.[2] Simple Man and Ben & Jerry's are parties to a franchise agreement (the "Franchise Agreement") pursuant to which Plaintiffs operate a Ben & Jerry's shop located in Blacksburg, Virginia (the "Blacksburg Shop"). (See Complaint at ¶¶

---

[1] The facts set forth in this section are based on those asserted in the Complaint and are assumed to be true solely for purposes of this motion.
[2] Unilever United States, Inc. ('Unilever") has filed a separate motion to dismiss the Complaint against it. However, as discussed at footnotes 4 and 6, below, Unilever is also entitled to dismissal of the Complaint on the grounds stated in this motion.

46, 48 and 81.)³  In their Complaint, Plaintiffs allege, among other things, that the Ben & Jerry's Defendants fraudulently induced Plaintiffs into purchasing the franchise (see Complaint at ¶ 68), negligently misrepresented facts regarding the franchise (id. at ¶ 73), breached the Franchise Agreement (id. at ¶ 82) and violated the Virginia Retail Franchising Act through their conduct related to the franchise (id. at ¶¶86, 90, 94 and 98).

The Franchise Agreement includes a dispute resolution process that contains a mandatory mediation provision.⁴  Section 26.2 of the agreement provides, in part:

> Except as otherwise provided in this Agreement, any claim or controversy arising out of or related to this Agreement (including any claim that the Agreement or any of its provisions is invalid, illegal, or otherwise voidable or void), the relationship between BEN & JERRY'S and OPERATOR, or OPERATOR'S operation of the Scoop Shop shall first be subject to the alternative dispute resolution process ("ADR process").

(Emphasis added.)  The first step in the ADR process is negotiation proceedings between the parties. (See Section 26.3.1.)  If the parties are unable to resolve the dispute through that negotiation, "the parties will then submit the dispute to non-binding mediation." (Section 26.3.3 (emphasis added).)  Section 26.3.4 provides, in part:

> Non-binding mediation hereunder shall be conducted by a mediator or mediation program designated by BEN & JERRY'S in writing (the "designated mediator"), or by a mediator whom BEN & JERRY'S and OPERATOR may otherwise agree.

---

³ Plaintiffs do not attach a copy of the Franchise Agreement to the Complaint.  A true and correct copy of the agreement is attached to the declaration of Nichole Fitzgerald submitted herewith.  The Court may consider the declaration and the Franchise Agreement in ruling on this motion to dismiss as Plaintiffs' claims are based on the agreement.  See Phillips v. LCI Int'l, Inc., 190 F. 3d 609, 618 (4th Cir. 1999) (court may consider document not attached to complaint in determining motion to dismiss because it was integral to and explicitly relied on in the complaint and plaintiff did not challenge authenticity).

⁴ Although Homemade is not a party to the Franchise Agreement, it is entitled to invoke the mediation provision as the claims against it and Ben & Jerry's are integrally related (as demonstrated by the fact that Plaintiffs' allegations are made jointly against Ben & Jerry's and Homemade) and Homemade is Ben & Jerry's parent company.  See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 426-17 (4th Cir. 2000) (discussing common law principles pursuant to which a nonsignatory can enforce, or be bound by, an arbitration provision in a contract executed by other parties); cf. Bonny v. Society of Lloyd's, 3 F.3d 156, 162 (7th Cir. 1993) (applying forum selection clause to an integrally related noncontracting party), cert. denied, 510 U.S. 1113 (1994).  Similarly, although Unilever has separately moved for dismissal of the claims against it, if the Court does not grant that motion to dismiss, the claims against Unilever should also be subject to the mediation requirement.  See Bonny, 3 F.3d at 162 ("A court may grant a motion to dismiss even as to nonmoving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related.").

(Emphasis added.)  The ADR process, including the mediation, is "intended to furnish the parties an opportunity to resolve disputes amicably, expeditiously and in a cost-effective manner on mutually acceptable terms." (Section 26.3.)

Plaintiffs' claims come within the broad scope of the mediation provision.  Nevertheless, Plaintiffs have commenced this action without first attempting to resolve the dispute by participating in the mandatory mediation as they agreed to do, and are required to do, under the terms of the Franchise Agreement.  Because Plaintiffs have failed to comply with the mediation provision, the Court should dismiss Plaintiffs' Complaint.

The Franchise Agreement also includes a forum selection clause.  Section 26.4 of the agreement provides, in part:

> Any legal action brought by OPERATOR against BEN & JERRY'S in any forum or court, whether federal or state, shall be brought only within the judicial district in which BEN & JERRY'S has its principal place of business at the time the action or proceeding is initiated.

Ben & Jerry's and Homemade's principal places of business are in Burlington, Vermont.  (*See* Complaint at ¶ 34.)  In the event the parties are unable to resolve this dispute through mediation, Plaintiffs are required by the terms of the Franchise Agreement to bring their claims in Vermont.  Rather than transfer this matter to Vermont, the Court should dismiss the Complaint because Plaintiffs cannot commence an action in Vermont until they have complied with the mediation requirement.

The Ben & Jerry's Defendants also request that the Court assess against Plaintiffs the Ben & Jerry's Defendants' costs and attorneys' fees in connection with the filing of this motion.  Plaintiffs have blatantly disregarded their contractual obligation to mediate this dispute before commencing a court action.  Plaintiffs were well aware of the obligation to mediate but chose to

ignore it, and they still refuse to voluntarily comply with it. Plaintiffs' actions have completely undermined the purpose of the mediation provision – to resolve disputes amicably, expeditiously and in a cost-effective manner – and have resulted in the Ben & Jerry's Defendants incurring costs and attorneys' fees that could otherwise have been entirely avoided. Under the circumstances, Plaintiffs should be required to pay the Ben & Jerry's Defendants' costs and attorneys' fees.

## ARGUMENT

I. <u>Plaintiffs' Complaint Should Be Dismissed for Failure to Mediate.</u>

Plaintiffs' claims fall within the scope of the mediation provision in the Franchise Agreement, and Plaintiffs must therefore pursue those claims through mediation before bringing the claims in court. Because Plaintiffs are first bound to mediate the claims, and they have not done so, the Complaint should be dismissed.

    A. <u>The Same Principles That Require Enforcement of Arbitration Agreements Require Enforcement of the Mediation Agreement in the Franchise Agreement.</u>

Where claims fall within the scope of a valid, enforceable agreement to arbitrate, a court has no power to grant relief, and the dispute must be resolved through arbitration. "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." See <u>Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985)</u> (emphasis in original). The same principles that apply to agreements to arbitrate apply to agreements to mediate. Where a party has agreed to mediate a dispute, a court does not have the power to grant relief, and the dispute must first be submitted to mediation as agreed by the parties. In <u>Fisher v. GE Medical Systems</u>, 276 F. Supp. 2d 891, 893-94 (M.D. Tenn. 2003), the Court held that an agreement to mediate claims through an outside mediator constituted an

agreement to "arbitrate" covered by the Federal Arbitration Act ("FAA").  In finding that mediation was covered by the FAA, the Court stated that the "policy in favor of the finality of arbitration is but one part of a broader goal of encouraging informal, i.e., non-judicial resolution of . . . disputes.  It is not arbitration per se that federal policy favors, but rather final adjustment of differences by a means selected by the parties."  Id. at 893.

In Fisher, the parties agreed to engage in a four-step dispute resolution program, including a mediation step.  In upholding the mediation step, the Court observed that "federal policy favors arbitration in a broad sense, and mediation surely falls under the preference for non-judicial dispute resolution.  Thus, agreements like RESOLVE [the four-step program in Fisher] are to be encouraged.  Accordingly, the court finds that [the plaintiffs'] agreement to mediate any claim before filing it in court is binding under the FAA."  Id. at 894.  The Court therefore granted the defendants' motion to compel mediation and stayed the case pending completion of the mediation procedures agreed to by the parties.  Id. at 896.

Other cases have similarly enforced agreements to mediate.  In Ziarno v. Gardner Carton & Douglas, LLP, 2004 U.S. Dist. LEXIS 7030, 03-3880, at *7 (E.D. Pa. Apr. 8, 2004), the defendant moved to dismiss the plaintiff's complaint on the grounds that the Court lacked subject matter jurisdiction over the action because the plaintiff had not first submitted the dispute to mediation and arbitration as required by the parties' agreement.  The Court agreed and dismissed the Complaint.  The plaintiff sought to avoid dismissal by arguing that court mediation would satisfy the mediation requirement.  Id.  The Court disagreed, holding that "the unambiguous intent expressed in the contract was for the parties to submit to private mediation/arbitration prior to bringing suit.  Therefore the Court does not have subject matter jurisdiction over this claim at this time."  Id. * 7-8.

In <u>Mortimer v. First Mount Vernon Indus. Loan Ass'n</u>, 2003 U.S. Dist. LEXIS 24698, AMD 03-1051, at *9 (D. Md. May 19, 2003), the Court dismissed the plaintiff's complaint for failure to mediate as required by the parties' agreement.  Although the matter involved the Maryland Uniform Arbitration Act (the "MUAA"), rather than the FAA, because the contract did not involve interstate commerce, the Court acknowledged that the MUAA was analogous to the FAA and concluded, much like the <u>Fisher</u> court had done in considering the FAA, that "mediation" comes within the definition of "arbitration" "'because the mediation clause in the case at bar manifests the parties' intent to provide an alternative method to "settle" controversies arising under the parties' . . . agreement".  <u>Id</u>. at * 6 (<u>quoting</u> <u>CB Richard Ellis, Inc. v. American Envtl. Waste Mgmt.</u>, 1998 U.S. Dist. LEXIS 20064, 98-CV-4183 (E.D.N.Y. Dec. 4, 1998)).  The Court found that the parties had agreed to first mediate the dispute and held that the plaintiff's lawsuit had to be deferred "pending plaintiff's compliance with his binding obligation to first mediate his claims."  <u>Id</u>. at * 9.  The Court did not order the parties to mediate.  Rather, it dismissed the case until such time as the plaintiff complied with the obligation to mediate.  <u>Id</u>.; <u>cf</u>. <u>Design Benefit Plans, Inc. v. Enright</u>, 940 F. Supp. 200, 206 (N.D. Ill. 1996) (granting motion to compel mediation of a counterclaim and staying proceeding on counterclaim pursuant to sections 3 and 4 of the FAA).

As demonstrated by these cases, where a party has agreed to mediate, and the claims asserted by the party fall within the scope of the mediation agreement, the party must first comply with the mediation requirement before bringing a lawsuit on the claims.

  B. <u>Plaintiffs' Claims Are Within the Scope of the Mediation Provision.</u>

The mediation provision in this case requires that "any claim or controversy arising out of or related to" the Franchise Agreement, the relationship between the parties and the operation of

the Blacksburg Shop be submitted to non-binding mediation. The "arising out of or related to" language is extremely broad. See, e.g., Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 398 (1967) (labeling an arbitration clause containing the phrase "arising out of or relating to this agreement" as a "broad arbitration clause"); Southland Corp. v. Keating, 465 U.S. 1 (1984) (same). The broad scope of the mediation provision easily encompasses Plaintiffs' claims in this case. Plaintiffs' first three counts for fraudulent inducement, negligent misrepresentation and estoppel, pursuant to which Plaintiffs allege that the Ben & Jerry's Defendants made fraudulent or negligent misrepresentations in connection with the franchise, all arise out of or relate to the Franchise Agreement, Plaintiffs' relationship with Ben & Jerry's and/or Plaintiffs' operation of the Blacksburg Shop. The fourth count for breach of contract, which alleges breach of the Franchise Agreement, clearly arises out of or relates to the Franchise Agreement. Counts five through eight, which allege violations of the Virginia Retail Franchising Act[5] and relate to the same alleged conduct as the other counts, also arise out of or relate to the Franchise Agreement, Plaintiffs' relationship with Ben & Jerry's and/or Plaintiffs' operation of the Blacksburg Shop.

All of Plaintiffs' claims are thus subject to the mediation provision. Because Plaintiffs have not first submitted their claims to mediation for resolution, the Complaint should be dismissed. Although some of the cases discussed above resulted in the courts compelling mediation and staying the action pending completion of mediation, the Court here should dismiss the case rather than stay it because, as discussed below, if the required mediation is not

---

[5] Plaintiffs title Counts V and VI as violations of the "Virginia Retail Franchising Act" and Counts VII and VIII as violations of the "Virginia Disclosure Registration Act". In fact, Counts VI, VII and VIII all seek to allege claims under the Retail Franchising Act. Count V seeks to allege a claim under the Business Opportunity Sales Act, which expressly excludes franchises from its coverage. See Va. Code Ann. § 59.1-263(B)(2).

successful and Plaintiffs' then seek to bring their claims in court, this Court is not the correct venue for the action.

II.  **If Mediation Is Unsuccessful, Plaintiffs' Claims Should Be Brought in Vermont.**

Because Plaintiffs' Complaint should be dismissed for failure to mediate, the Court does not need to consider at this time the correct venue for this case in the event the parties' dispute is not resolved in mediation.  Nevertheless, the Ben & Jerry's Defendants raise the issue of the forum selection clause in the Franchise Agreement because that clause further demonstrates that this case should be dismissed.  The case should be dismissed because if Plaintiffs reassert their claims after mediation (assuming mediation is not successful), this Court will not be the correct venue for the case.  Pursuant to the forum selection clause, Plaintiffs will be required to bring their claims in Vermont.

Courts typically consider forum selection clauses like the one here in the context of a motion to transfer pursuant to 28 U.S.C. § 1404(a).  See, e.g., Atley Pharm. V. Brighton Pharm., Inc., 2006 U.S. Dist. LEXIS 72614, 3:06CV301 (E.D. Va. Oct. 4, 2006); BP Int'l Inv., Inc. v. Online Exchange, Inc., 105 F. Supp. 2d 493 (E.D. Va. 2000).  The Ben & Jerry's Defendants are not at this time moving to transfer this matter because it should be dismissed for failure to mediate.[6]  But if Plaintiffs were to bring this case in this Court following mediation, transfer of the case to United States District Court for the District of Vermont would then be appropriate. Where a forum selection clause is present, "it is 'a significant factor that figures centrally in the court's calculus'" in determining a motion to transfer.  Atley, 2006 U.S. Dist. LEXIS 72614 at *

---

[6] If this Court, for some reason, were to not enforce the mediation requirement in the Franchise Agreement, then the Ben & Jerry's Defendants would, at that time, seek a transfer of this case pursuant to 28 U.S.C. § 1404(a) and would fully brief the issue at that time.  Although Homemade is not a party to the Franchise Agreement, it would be entitled to enforce the forum selection clause.  See Bonny, 3 F.3d at 162-63 (finding noncontracting parties were integrally related to moving defendants who moved to enforce forum selection clause such that suit against all defendants should be kept in a single forum selected in forum selection clause).  Unilever would be entitled to enforce the clause for the same reason.

7 (quoting Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988)).  "[A]pplicable to this case is the U.S. Supreme Court's established legal precedent that a forum selection clause is generally binding and should be enforced unless the party seeking to void it can 'clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."  Id. (quoting Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972)).  "The Fourth Circuit Court of Appeals has followed the lead of the Supreme Court in giving great weight to such clauses."  Id. at 10; see also Brock v. Entre Computer Centers, Inc., 933 F.2d 1253 (4th Cir. 1991).

In Atley, the Court enforced a contractual forum selection clause and transferred the case to the Northern District of California, the forum chosen by the parties in their agreement.  The Court concluded that the convenience issues applied equally to both parties, and that the "determinative issue" therefore was "how much weight the Court should place upon the forum selection clause in the Agreement."  Atley, 2006 U.S. Dist. LEXIS 72614 at * 9.  The Court gave the clause great weight because the agreement not only selected California as the chosen venue, it also provided that California law governed the agreement.  The Court also held that because of the forum selection clause, the burden was "on the plaintiff to establish why the contractual agreement of the parties should be ignored."  Id. at * 12.  The plaintiff was required to show that the chosen forum "'will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'"  Id. (quoting Bremen, 407 U.S. at 18).  The Court concluded that the plaintiff did not meet its burden because the claims brought by the plaintiff were "largely a product of the Agreement bargained for and signed by both parties.  It should have been clearly foreseeable to [the plaintiff], when it contracted with [the defendant], that it

might have to bring an action for breach of contract . . . in the venue specified in the Agreement." Id. at 13.

The same factors, as well as others supporting the impropriety of the venue, are applicable here. As in Atley, the convenience issues apply equally to both parties, and would actually even weigh in favor of a transfer. First, it may be more convenient for Plaintiffs to litigate in Virginia, but it is more convenient for the Ben & Jerry's Defendants to litigate in Vermont, their home state. This is particularly true because Ben & Jerry's is the franchisor of a franchise system with franchisees across the country. If Ben & Jerry's had to litigate disputes in the various states of its franchisees, it would substantially interfere with the operations of the company. Second, the convenience of the witnesses would weigh in favor of a transfer. While there are no doubt witnesses who are located in Virginia, numerous witnesses would be current or former employees of Ben & Jerry's who are located in Vermont. It would be much more convenient for those witnesses to have the case heard in Vermont as opposed to Virginia. Third, ease of access to justice would also weigh in favor of a transfer because many documents relevant to the issues in the case are located in Vermont <u>and, more importantly, there are former employees of the Ben & Jerry's Defendants who could not be required to appear at trial in Virginia.</u>

The choice-of-law factor relied upon in Atley would also support a transfer of this case. As discussed above, the Franchise Agreement contains a choice-of-law provision that selects Vermont law. The Vermont court would be the more appropriate forum for determining issues of Vermont law. Finally, Plaintiffs would have the burden of establishing that the forum selection clause should be ignored. Plaintiffs would not be able to meet this burden because it should have been clearly foreseeable to Plaintiffs when they entered into the Franchise

Agreement that they might someday have to bring an action in Vermont, as specified in the Franchise Agreement.

Accordingly, if it became an issue, transfer of this case to Vermont pursuant to 28 U.S.C. § 1404(a) would be appropriate.  Because this matter would be subject to transfer to Vermont if Plaintiffs were to bring the case following an unsuccessful mediation, Plaintiffs' failure to mediate should result in the dismissal of this case by this Court, rather than a stay.  This Court will not be the correct venue for the case if it is pursued by Plaintiffs after mediation.  The correct venue will be the United States District Court for the District of Vermont.

III.    <u>Plaintiffs' Should Be Required to Pay the Ben & Jerry's Defendants' Costs and Fees.</u>

The Ben & Jerry's Defendants should not have to bear the costs of moving to dismiss Plaintiffs' Complaint for failure to mediate.  Those costs should be borne by Plaintiffs.  Had Plaintiffs first mediated this dispute, as they agree to do in the Franchise Agreement, the Ben & Jerry's Defendants would never have had to file this motion – and the Court would not have had its time and resources taken up on this matter.  Instead, Plaintiffs decided to completely disregard their contractual obligation to mediate and commenced this action.  Plaintiffs made that decision knowing full well that they were obligated to first mediate the dispute.

Back in December 2007, before Plaintiffs filed this action, counsel for the Ben & Jerry's Defendants reminded counsel for Plaintiffs by letter that if Plaintiffs pursued their dispute, they would be required to comply with the ADR process set forth at Section 26 of the Franchise Agreement.  (<u>See</u> Declaration of Barry M. Heller at ¶ 2.)  Nevertheless, Plaintiffs commenced this action in February without complying with that ADR process.  Counsel for the Ben & Jerry's Defendants became aware that Plaintiffs had filed the Complaint before it was served, and they wrote to counsel for Plaintiffs requesting that they withdraw the Complaint before

serving it as Plaintiffs were required to engage in mediation prior to commencing an action. (Id. at ¶¶ 3-4.) Not only did Plaintiffs not withdraw the Complaint (or comply with the mediation requirement), they moved to default Ben & Jerry's for failing to respond to the Complaint, when Ben & Jerry's was not even aware that the Complaint had been served.[7]  Counsel for the Ben & Jerry's Defendants has since sought to arrange for a mediation between the parties, but Plaintiffs have responded that they refuse to engage in mediation absent a court order to do so. (Id. at ¶ 5.)

The Court has the inherent authority to impose costs and fees against a party who "'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Chambers v. Nasco, Inc., 501 U.S. 32, 45-46 (1991) (quoting F.D.Rich Co. v. United States ex rel. Indus. Lumber Co., 417 U.S. 116 (1974)).  This inherent authority "extends to a full range of litigation abuses." Id. at 46; see also Sprester v. Jones Motor Co., 2006 U.S. Dist. LEXIS 16427, 5:05cv00021 (W.D. Va. Apr. 4, 2006) (imposing sanctions pursuant to court's inherent authority); Obifuele v. 1300, LLC, 2006 U.S. Dist. LEXIS 60043, SKG-04-3839 (D. Md. Aug. 23, 2006) (same).

The Court should exercise its inherent power in this case.  As a result of Plaintiffs' refusal to comply with their obligation to mediate, the Ben & Jerry's Defendants have had to incur the costs of preparing and filing this motion to dismiss, a motion they should never have had to file.  The Ben & Jerry's Defendants have sought numerous times, to no avail, to obtain Plaintiffs' compliance with the mediation requirement.  They should not have to bear the costs of Plaintiffs' unjustifiable refusal to comply.  The required mediation is "intended to furnish the parties an opportunity to resolve disputes amicably, expeditiously and in a cost-effective manner on mutually acceptable terms." (Franchise Agreement at Section 26.3.)  Through their actions, Plaintiffs have unfairly and unreasonably denied the Ben & Jerry's Defendants the benefit the

---

[7] Plaintiffs subsequently agreed to withdraw the motion for default.

mediation requirement was intended to provide.  The Court should therefore use its inherent power to assess the costs and attorneys' fees related to this motion against Plaintiffs.

## **CONCLUSION**

Based on the foregoing, the Ben & Jerry's Defendants respectfully request that the Court dismiss Plaintiffs' Complaint and assess against Plaintiffs the Ben & Jerry's Defendants' costs and attorneys' fees in connection with this motion.

>
> Ben & Jerry's Franchising, Inc. and Ben & Jerry's Homemade, Inc.
>
>
> By:      s/ John J. Dwyer
>              One of its Attorneys
> John J. Dwyer
> VSB No. 31810
> Barry M. Heller (admitted *pro hac vice*)
> Attorneys for Ben & Jerry's Franchising, Inc. and Ben & Jerry's Homemade, Inc.
> DLA PIPER US LLP
> 1775 Wiehle Avenue, Suite 400
> Reston, VA 20190-5159
> Phone: 703.773.4000
> Fax: 703.773.5000

## CERTIFICATE OF SERVICE

    I hereby certify that on the 23rd day of April, 2008, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

    Arthur P. Strickland
    Arthur P. Strickland, P.C.
    P.O. Box 2866
    Roanoke, VA 24001

And I hereby certify that I will mail the document by U.S. mail to the following non-filing user:

    Jeffrey M. Goldstein
    Goldstein Law Group
    P.O. Box 2278
    Leesburg, VA 20177


                                                _____s/ John J. Dwyer_____
                                                John J. Dwyer, Esq.
                                                Virginia Bar No. 31810
                                                Attorney for Ben & Jerry's Franchising, Inc. and
                                                Ben & Jerry's Homemade, Inc.
                                                DLA Piper US LLP
                                                1775 Wiehle Avenue, Suite 400
                                                Reston, VA 20190-5159
                                                Phone:  703.773.4000
                                                Fax:  703.773.5000
                                                john.dwyer@dlapiper.com