IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SHANNON SHERMAN and <br> SIMPLE MAN, INC., <br>              Plaintiffs, <br><br> v. <br><br> BEN & JERRY'S FRANCHISING, INC., and <br> BEN & JERRY'S HOMEMADE, INC., <br>              Defendants. | ) <br> ) <br> ) <br> ) Case No. 7:08-cv-00060 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER

Defendants Ben & Jerry's Franchising, Inc. ("Ben & Jerry's") and Ben & Jerry's Homemade, Inc. ("Homemade") (collectively, the "Ben & Jerry's Defendants") submit this memorandum in support of their motion to transfer this matter to the United States District Court for the District of Vermont.

## INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff Simple Man, Inc. ("Simple Man") was a Ben & Jerry's franchisee, operating a Ben & Jerry's shop in Blacksburg, Virginia (the "Blacksburg Shop"), pursuant to a franchise agreement, dated October 21, 2004 (the "Franchise Agreement").[1] Plaintiff Shannon Sherman ("Sherman") is the president of Simple Man. (Simple Man and Sherman are sometimes collectively referred to hereinafter as "Plaintiffs"). Simple Man and Ben & Jerry's were also parties to a development agreement, dated August 2, 2004 (the "Development Agreement"),

---

[1] Plaintiffs do not attach a copy of the Franchise Agreement to the Complaint. A true and correct copy of the Franchise Agreement is attached to the declaration of Nichole Fitzgerald ("Fitzgerald Dec.") submitted herewith as Exhibit A.

pursuant to which Plaintiffs agreed to develop three Ben & Jerry's Shops.[2] The Blacksburg Shop was the only shop developed by Plaintiffs, and the parties mutually agreed in 2005 to terminate the Development Agreement.

The Franchise Agreement includes a forum selection clause (at Section 26.4) which provides, in part:

> Any legal action brought by OPERATOR against BEN & JERRY'S in any forum or court, whether federal or state, shall be brought only within the judicial district in which BEN & JERRY'S has its principal place of business at the time the action or proceeding is initiated.

The Development Agreement (at Section 17.4) contains the same provision. Ben & Jerry's and Homemade's principal places of business are in Burlington, Vermont. Despite their contractual obligation to bring the action in Vermont, Plaintiffs commenced this action against the Ben & Jerry's Defendants and Unilever in this Court.[3]

The Ben & Jerry's Defendants had earlier moved to dismiss this case on the grounds that Plaintiffs had failed to mediate the dispute as required by the terms of the Franchise Agreement, which contains an alternative dispute resolution process (at Section 26.2) requiring the parties to engage in mediation before commencing any legal action. In their motion, the Ben & Jerry's Defendants also raised the venue issue, informing the Court that if this matter were to proceed following an unsuccessful mediation (or if the Court were to not enforce the mediation provision), the Ben & Jerry's Defendants would move to transfer this matter pursuant to 28 U.S.C. § 1404(a).

---

[2] The Development Agreement is attached to the Fitzgerald Dec. as Exhibit B.
[3] Although Homemade is not a party to either the Franchise Agreement or the Development Agreement, it is entitled to invoke the forum selection clause as the claims against it and Ben & Jerry's are integrally related (as demonstrated by the fact that Plaintiffs' allegations are made jointly against Ben & Jerry's and Homemade) and Homemade is Ben & Jerry's parent company. *See Bonny v. Society of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993) (applying forum selection clause to an integrally related noncontracting party), *cert. denied*, 510 U.S. 1113 (1994).

Following the filing of the motion to dismiss, Plaintiffs agreed to participate in mediation. That mediation has now taken place, but the parties were unable to resolve this dispute. Accordingly, the Ben & Jerry's Defendants now move to transfer this matter to the United States District Court for the District of Vermont. The matter should be transferred because, among other reasons: (1) Plaintiffs contractually agreed to bring this case in Vermont; (2) the convenience of the parties and witnesses favors a transfer to Vermont; (3) Vermont provides easier access to sources of proof; and (4) the interests of justice, including having a Vermont court determine a matter that is to be decided under Vermont law, favor a transfer to Vermont.

## ARGUMENT

Pursuant to 28 U.S.C. § 1404(a), "for the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it may have been brought." In determining a motion to transfer venue, the Court first determines whether the proposed transferee court is one in which the action could originally have been brought. *See BHP Int'l Investment, Inc. v. Online Exchange, Inc.*, 105 F. Supp. 2d 493, 498 (E.D. Va. 2000). If that requirement is satisfied, the Court then considers case-specific factors to determine whether the matter should be transferred. *See SouthEastern Textile Mach., Inc. v. H. Warshow & Sons, Inc.*, 2006 U.S. Dist. LEXIS 5366 at *5-6 (W.D. Va. 2006). The burden to show that a transfer is proper is normally on the moving party. However, where a forum selection clause is present, the burden is on the plaintiff to establish why the parties' contractual agreement should be ignored. *See Atley Pharm. v. Brighton Pharm., Inc.*, 2006 Dist. LEXIS 72614 at *12 (E.D. Va. 2006). Plaintiffs will not be able to meet this burden.

### A. Jurisdiction and Venue Are Proper in Vermont.

The first requirement for a motion to transfer venue pursuant to Section 1404(a) – that the proposed transferee court is one in which the action could have originally been brought – is clearly satisfied here. In an action such as this one, where jurisdiction is based on diversity of citizenship, venue is proper in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(a)(2). There is no question that a substantial part of the alleged events or omissions giving rise to Plaintiffs' claims arose in Vermont.

First, the Franchise Agreement provides that it takes effect upon acceptance and execution by Ben & Jerry's in Vermont. (*See* Fitzgerald Dec. at ¶ 2.) Second, Shannon Sherman and her husband, Alan Sherman, attended Discovery Day in Vermont. (*Id.*) Plaintiffs allege that Ben & Jerry's made misrepresentations at Discovery Day. (*See* Complaint at ¶ 16.) Third, Ben & Jerry's preparation of, and decisions regarding, the Uniform Franchise Offering Circular ("UFOC") at issue occurred in Vermont. (Fitzgerald Dec. at ¶ 3.) Ben & Jerry's preparation of, and decisions regarding, the extranet figures at issue also occurred in Vermont. (*Id.*) Plaintiffs allege that Ben & Jerry's made fraudulent misrepresentations concerning gross sales for Ben & Jerry's shops in the UFOC and in the extranet figures. (*See* Complaint at ¶¶ 42-45.) Fourth, Ben & Jerry's actions and decisions regarding the execution of the Franchise Agreement and the Development Agreement occurred in Vermont. (Fitzgerald Dec. at ¶ 3.) Fifth, Ben & Jerry's actions and decisions regarding the termination of the Development Agreement took place in Vermont. (*Id.*) Sixth, Ben & Jerry's decision to not approve a site in Christiansburg proposed by Plaintiffs occurred in Vermont. (*Id.*) Plaintiffs allege that the failure to approve the Christiansburg site constituted a breach of the Franchise Agreement. (*See* Complaint at ¶ 82.)

Seventh, Ben & Jerry's actions and decisions regarding the assistance and support (or alleged lack of assistance and support) provided to Plaintiffs took place in Vermont. (Fitzgerald Dec. at ¶ 3.) Plaintiffs allege that Ben & Jerry's failed to provide ongoing support and assistance. (*See* Complaint at ¶ 60.) Finally, Plaintiffs allege that Ben & Jerry's implemented promotions that did not help Plaintiffs. (*See* Complaint at ¶¶ 50.) Ben & Jerry's actions and decisions regarding advertising and promotional campaigns were made in Vermont. (Fitzgerald Dec. at ¶ 3.) These numerous facts leave no doubt that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Vermont.[4] Thus, the first requirement for transferring this matter to the United States District Court for the District of Vermont is met.

### B. Plaintiffs Contractually Agreed to Bring this Action in Vermont.

In determining a motion to transfer venue, "the presence of a forum-selection clause . . . will be a significant factor that figures centrally in the district court's calculus." *Brock v. Entre Computer Centers, Inc.*, 933 F.2d 1253, 1258 (4th Cir. 1991) (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988); *see also Pax, Inc. v. Veolia Water North America Operating Services, Inc.*, 347 F. Supp. 2d 281, 283 (W.D. Va. 2004) ("a binding forum selection clause is an important factor in deciding whether to order transfer."). In fact, "[t]he Fourth Circuit Court of Appeals has followed the lead of the Supreme Court in giving great weight to such clauses." *Atley*, 2006 Dist. LEXIS 72614 at *10 (citing *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) and *Sterling Forest Assoc. v. Barnett-Range Corp.*, 840 F.2d 249, 251 (4th Cir. 1988)).

In *Atley*, the court granted the defendant's motion to transfer the case from Virginia to California, relying heavily on the forum selection clause in the parties' contract. *Id.* at *12.

---

[4] In addition, in both the Franchise Agreement (at Section 26.4) and the Development Agreement (at Section 17.4), Plaintiffs "waive[d] all questions of personal jurisdiction or venue . . . ."

Enforcing the forum-selection clause, the court stated that "the claim [plaintiff] brings against [defendant] is largely a product of the Agreement bargained for and signed by both parties. It should have been clearly foreseeable to [plaintiff], when it contracted with [defendant], that it might have to bring an action for breach of contract . . . in the venue specified in the Agreement." *Id.* at *13; *see also BHP Int'l*, 105 F. Supp. 2d at 499-500 (relying on forum selection clause in granting motion to transfer).

The same is true here, and the Court should hold Plaintiffs to their agreement to litigate this matter in Vermont. Plaintiffs knowingly and voluntarily agreed in the Franchise Agreement to bring any legal action against Ben & Jerry's in Vermont. In fact, Plaintiffs agreed twice, first in the Development Agreement and then again in the Franchise Agreement, to bring claims against Ben & Jerry's in Vermont. Plaintiffs' claims in this matter arise out of entering into the Development and Franchise Agreements with Ben & Jerry's, and Plaintiffs should have clearly foreseen that any dispute with Ben & Jerry's would have to be venued in the jurisdiction specified in the Development and Franchise Agreements.

Furthermore, the forum selection clause in the Development and Franchise Agreements is a reasonable clause, and an important one for Ben & Jerry's. Ben & Jerry's has approximately 400 franchises located throughout the United States, and although over its more than 25 years in franchising it has had very little litigation with its franchisees, if it were required to litigate in each state where its franchisees are based, and even if just a few litigations were filed, it would substantially interfere with the operations of the company. (*See* Fitzgerald Dec. at ¶ 7.) In *BHP International*, the defendant submitted an affidavit stating that the forum selection clause allowed it to organize its corporate affairs, and that absent the forum selection clause, it "would be subject to suit in all fifty states resulting in financial and logistical hardships." The court

6

specifically noted and relied on this point in enforcing the forum selection clause in the parties' agreement. *BHP Int'l*, 105 F. Supp. 2d at 499. Accordingly, the Court should enforce the forum selection clause and transfer this matter to the venue contractually agreed to by the parties – the United States District Court for the District of Vermont.

### C. The Other Factors Weigh in Favor of a Transfer.

In addition to the forum selection clause, federal district courts in Virginia consider other factors in deciding whether to grant a motion to transfer. The factors include: (1) the convenience of the parties and witnesses; (2) ease of access to sources of proof; (3) the cost of obtaining the attendance of witnesses; (4) the availability of compulsory process; (5) the interest in having local controversies decided at home; (6) in diversity cases, the court's familiarity with the applicable law; and (7) the interests of justice. *See BHP Int'l*, 105 F. Supp. 2d at 498; *SouthEastern Textile*, 2006 U.S. Dist. LEXIS 5366 at *5 (listing similar factors).

As noted above, while the burden to show that a transfer is proper usually rests on the movant, "when a forum selection clause is cited as a reason to transfer a case, the burden is on the plaintiff to establish why the contractual agreement of the parties should be ignored." *Atley*, 2006 U.S. Dist. LEXIS 72614 at *12 (citing *BHP Int'l*, 105 F. Supp. 2d at 498-499). In this case, each of the factors support upholding the parties' choice of a Vermont forum.

#### 1. The Convenience of the Parties and Witnesses Support a Transfer.

Although the convenience of the parties is often not dispositive of a motion to transfer because it typically results in the balance of inconvenience shifting from one party to the other, there is no question that it is more convenient for the Ben & Jerry's Defendants (who have many employees in Vermont who may be needed as witnesses) to litigate in Vermont, their home state. Litigating in Vermont is particularly important to Ben & Jerry's because there is a Vermont

choice-of-law clause in the Franchise and Development Agreements and because, as discussed above, Ben & Jerry's is the franchisor of a franchise system with franchisees across the country. If Ben & Jerry's had to litigate disputes in the franchisees' states, it would substantially interfere with the operations of the company.

In addition, the Ben & Jerry's Defendants' status as corporations "with sufficient resources to defend in a foreign forum is not a factor that this court considers in a transfer analysis." *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 738 (E.D. Va. 2007). Thus, the Court should not use the Ben & Jerry's Defendants' corporate status against them in ruling on a motion to transfer.

Unlike the convenience of the parties factor, "the convenience of the witnesses is often dispositive in transfer decisions." *Glamorgan Coal Corp. v. Ratners Group PLC*, 854 F. Supp. 436, 438 (W.D.Va. 1993); *see also JHT Tax*, 482 F. Supp. 2d at 737 (emphasizing that the convenience of the witnesses "factor is often the most important in balancing for a potential § 1404(a) transfer"). The convenience of the witnesses factor weighs heavily in favor of a transfer here. No doubt there will be some witnesses located in Virginia, including Plaintiffs, but as shown by the Fitzgerald Declaration, numerous witnesses are current or former employees of Ben & Jerry's who are located in Vermont. (*See* Fitzgerald Declaration at ¶¶ 4 and 5.) It is unquestionably more convenient for these witnesses to have this matter heard in Vermont as opposed to Virginia.

The witnesses located in Vermont include:

1. Deborah Heintz, the Director of Retail Operations at Ben & Jerry's, who has dealt with the Shermans extensively since assuming her position in February 2007 and who will also be able to testify regarding UFOC and the support provided to Plaintiffs;

2.  Jeannie Satink, the Sales Operations Manager of Ben & Jerry's, who is involved with distribution issues for Ben & Jerry's and will be able to testify regarding the sale and distribution of Ben & Jerry's products in the Blacksburg area;

3.  Greta Barker, a Franchise Sales Specialist for Ben & Jerry's, who dealt with the Shermans relating to their application and interviews with Ben & Jerry's at the time they purchased their franchise;

4.  Lynda Blouin, the Retail Information System Supervisor of Ben & Jerry's, who will be able to provide testimony regarding the UFOC and the extranet figures;

5.  Chuck Jones, the Senior Global Manager of Franchise Development of Ben & Jerry's, who will be able to testify regarding the UFOC, the Discovery Day attended by the Shermans and the rejection of the Christiansburg site;

6.  Pat Fleming, the East Coast Development Manager of Ben & Jerry's, who will be able to provide testimony regarding the business consultation that was done for the Blacksburg Shop;

7.  Lisa DeNatale, the Global Retail Brand Manager of Ben & Jerry's, who will be able to testify regarding the advertising and promotional campaigns that are at issue in this case; and

8.  Nicole Fitzgerald, Paralegal/Franchise Compliance Specialist at Ben & Jerry's, who dealt with the Shermans in connection with their becoming a Ben & Jerry's franchisee, default issues related to the Franchise Agreement and the termination of the Development Agreement.  (*See* Fitzgerald Declaration at ¶ 5.)

In addition, some of the likely witnesses in this matter are former employees of Ben & Jerry's who still live in Vermont, and over whom Ben & Jerry's has no right to require

appearance for trial in Virginia. One of those witnesses, Will Patten, the former Director of Retail Operations, is a very important witness for Ben & Jerry's, and Ben & Jerry's would be severely prejudiced if it could not bring him to trial. (*Id.* at ¶ 4.) Mr. Patten dealt with the Shermans with respect to many of the issues in this case, including the rejection of the Christiansburg site, and he was also involved in the preparation of the UFOC. (*Id.*) Plaintiffs in the Complaint (at ¶ 29) and elsewhere have referred to statements allegedly made by Mr. Patten in connection with the UFOC. (*Id.*)

Kim Steinfeld, the former Senior Manager Retail System Services of Ben & Jerry's, is another former employee witness who still lives in Vermont. (*Id.*) She could provide testimony on product distribution issues (another important issue in the case). (*Id.*) Due to the number of witnesses located in Vermont, and Ben & Jerry's inability to require any of the former employees located in Vermont to travel to Virginia for a trial, the witness inconvenience factor strongly weighs in favor of a transfer.

### 2. The Ease of Access to Sources of Proof Favors Vermont.

The ease of access to evidence factor also weighs in favor of a transfer. As discussed above, some of the witnesses, including a very important witness (Will Patten), are former employees, and Ben & Jerry's cannot require these witnesses to appear at trial in Virginia. Without these witnesses, Ben & Jerry's will be severely prejudiced. (*See* Fitzgerald Dec. at ¶ 4.) In addition, most of the documents relevant to the issues in this case are based in Vermont, where Ben & Jerry's is headquartered. (*Id.* at ¶ 6.)

The related factors of costs of obtaining attendance of witnesses and the availability of compulsory process also favor a transfer to Vermont. Again, Ben & Jerry's cannot require former employees located in Vermont to appear at trial in Virginia. In addition, due to the

number of witnesses located in Vermont, including many current employees, the costs of obtaining attendance of those witnesses in Virginia would be greatly increased if this matter were not transferred to Vermont.  The costs for Plaintiffs of attending trial in Vermont may be greater than if this matter remained in Virginia, but the majority of the witnesses in this case are located in Vermont.  Moreover, Plaintiffs were aware of the possibility of having to litigate a dispute with Ben & Jerry's in Vermont when they freely entered into contractual agreements with a Vermont-based company. Therefore, on balance, the cost of obtaining attendance of witnesses factor supports a transfer.

### 3.    Vermont Has a Strong Interest in Deciding this Matter.

The local interest factor also weighs in favor of this dispute being determined in Vermont.  While it is true that Plaintiffs are located in Virginia, both Ben & Jerry's Franchising, Inc. and Ben & Jerry's Homemade, Inc. are Vermont corporations, and "Vermont has an 'important interest in protecting its citizens' intellectual property rights and business interests.'" *Anichini, Inc. v. Campbell*, 2005 U.S. Dist. LEXIS 43271 at *13 (D. Vt. 2005) (quoting *Real Good Toys, Inc. v. XL Mach. Ltd.*, 163 F. Supp. 2d 421, 425 (D. Vt. 2001)).

Vermont's interest in deciding this dispute is particularly strong due to the Vermont choice-of-law clause in the Franchise and Development Agreements.  Federal district courts in Virginia have recognized that the local controversies factor weighs in favor of a transfer where the issues presented in the matter require interpretation of the transferee state's law.  *See Coors Brewing Co. v. Oak Beverage, Inc.*, 549 F. Supp. 2d 764, 773 (E.D. Va. 2008); *BHP Int'l*, 105 F. Supp. 2d at 499.

11

### 4. The Vermont Court is More Familiar with Vermont Law.

As discussed above, the Franchise and Development Agreements contain a Vermont choice-of-law clause. Thus, the familiarity with applicable law factor weighs heavily in favor of a transfer of this matter to Vermont. In *Marsh v. United States*, 2007 U.S. Dist. LEXIS 49718 at *10 (W.D. Va. 2007), the Court granted a motion to transfer a matter that was subject to California law to a federal court in California. The Court held as follows:

> Naturally, a federal court in California would be much more familiar with the applicable law. This court acknowledges that a Virginia federal court would have no difficulty interpreting the applicable California law; however, in the further interest of justice, considering the fact that all other relevant factors indicate that California would be a more convenient venue, I find that California federal courts would be better suited to decide this case.

*Id.* at * 10. Other courts have reached the same conclusion. In *BHP International*, the Court granted a motion to transfer an action that arose under Missouri law to Missouri, finding that "[a]lthough this court could familiarize itself with Missouri law for the purposes of the case at bar, the court finds that Missouri courts have a strong interest in having local controversies decided at home." *BHP Int'l*, 105 F. Supp. 2d at 499. Similarly, in *Atley*, the Court concluded that California was the proper forum to resolve a dispute that involved an agreement containing not only a California choice of forum, but also a California choice of law. *Atley*, 2006 U.S. Dist. LEXIS 72614 at *12. Here, the Franchise and Development Agreements contain both a Vermont choice of forum and a Vermont choice of law. Accordingly, Vermont is the proper forum to resolve this dispute.

### 5. The Interests of Justice Favor a Transfer to Vermont.

The discussion above of all of the other factors to be considered in connection with a motion to transfer should leave no doubt that the interests of justice would be served by a transfer of this matter to the United States District Court for the District of Vermont. While it may be more convenient for Plaintiffs to have this matter heard in this Court, Plaintiffs contractually agreed to bring any action against Ben & Jerry's in Vermont. The interests of justice will be served by requiring Plaintiffs to comply with their contractual obligations. In addition, the convenience of the witnesses, including the numerous witnesses located in Vermont, will be served by transferring this matter to Vermont. The interest of justice will be further served by a transfer to Vermont because of the easier access to proof in Vermont. This is particularly the case with respect to the former employees of Ben & Jerry's, some of whom are important witnesses, who cannot be compelled to attend trial in Virginia. Finally, Vermont has a strong interest in having this dispute, which is subject to Vermont law, decided in Vermont by a Vermont court.

### CONCLUSION

Based on the foregoing, a transfer of this matter pursuant to 28 U.S.C. § 1404(a) would serve the convenience of the parties and witnesses and the interests of justice. The Ben & Jerry's Defendants therefore respectfully request that the Court transfer this matter to the United States District Court for the District of Vermont.

Respectfully submitted,

Ben & Jerry's Franchising, Inc. and Ben & Jerry's Homemade, Inc.

By: /s/ Iris Figueroa Rosario
Iris Figueroa Rosario
VSB No. 47350
Eric L. Yaffe (*Pro Hac Vice* pending)
Attorneys for Ben & Jerry's Franchising, Inc. and Ben & Jerry's Homemade, Inc.
GRAY PLANT MOOTY
2600 Virginia Avenue, N.W.
Suite 1111 – The Watergate
Washington, D.C. 20037-1931
Phone: 202.295.2200
Fax: 202.295.2250
Iris.Rosario@gpmlaw.com
Eric.Yaffe@gpmlaw.com

John J. Dwyer
VSB No. 31810
Barry M. Heller (admitted *Pro Hac Vice*)
Attorneys for Ben & Jerry's Franchising, Inc. and Ben & Jerry's Homemade, Inc.
DLA PIPER US LLP
1775 Wiehle Avenue, Suite 400
Reston, VA 20190-5159
Phone: 703.773.4000
Fax: 703.773.5000
John.Dwyer@dlapiper.com
Barry.Heller@dlapiper.com

Dated: September 12, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of September, 2008, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Arthur P. Strickland
Arthur P. Strickland, P.C.
P.O. Box 2866
Roanoke, VA 24001

And I hereby certify that I will mail the document by U.S. mail as well as E-mail the document to the following non-filing user:

Jeffrey M. Goldstein
Goldstein Law Group
P.O. Box 2278
Leesburg, VA 20177

/s/ Iris Rosario
Iris Figueroa Rosario
VSB No. 47350
Attorney for Ben & Jerry's Franchising, Inc. and Ben & Jerry's Homemade, Inc.
GRAY PLANT MOOTY
2600 Virginia Avenue, N.W.
Suite 1111 – The Watergate
Washington, D.C. 20037-1931
Phone: 202.295.2200
Fax: 202.295.2250
Iris.Rosario@gpmlaw.com